**In re Madison H. HOOTON,**
**Jr., Debtor.**

**CENTRAL SOYA COMPANY,**
**INC., Plaintiff,**

**v.**

**Madison H. HOOTON, Jr. and Amsouth Bank, N.A. (formerly First National Bank of Birmingham) and Madison H. Hooton, Jr., as Trustees of the Madison H. Hooton, Jr. Trust; and Tim Coe, Chairman of the Unsecured Creditors' Committee, as Representative of the Creditors, Defendants.**

**Bankruptcy No. 83–05262.**
**Adv. No. 84–0348.**

United States Bankruptcy Court,
N.D. Alabama.

March 11, 1986.

Fairlane Town Center may have in this case

Thomas J. Knight, Anniston, Ala., for debtor.

David Anderson, Birmingham, Ala., for AmSouth Bank.

because that matter is not presently before me.

Richard P. Carmody, Birmingham, Ala., for Cent. Soya Co., Inc.

## OPINION AND ORDER ON MOTIONS TO DISMISS COMPLAINT

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction—*

The above-styled case was commenced by the debtor's voluntary petition filed under title 11, chapter 11, United States Code, on September 29, 1983. This case and all proceedings therein were referred to the bankruptcy judges by an order of the District Court after July 10, 1984, and said case remains pending under said chapter 11, before the undersigned bankruptcy judge.

The above-styled adversary proceeding was commenced by a prepetition creditor, Central Soya Company, Inc. (hereinafter referred to as Central Soya), against the debtor, Madison H. Hooton, Jr. (hereinafter referred to as debtor), the debtor's co-trustee under a trust created by the debtor's late father, said co-trustee being AmSouth Bank, N.A. (hereinafter referred to as bank), and the chairman of the unsecured creditors' committee. The debtor and the bank, respectively, appeared by legal counsel and moved for dismissal of the complaint, on the ground that the complaint fails to state a claim upon which relief can be granted. The third defendant has made no appearance in this adversary proceeding.

In its complaint, Central Soya seeks equitable relief by having the Court declare that it holds a lien upon the real property placed in trust by the debtor's late father, which lien secures the indebtedness owed to it by the debtor. It is alleged that this lien arose and attached by virtue of Central Soya's having obtained a judgment against the debtor's late father, the debtor, and others for the sum of $818,652.13 on August 12, 1982, and its having filed a certificate of said judgment with the Judge of Probate of Clay County, Alabama, on December 6, 1982.

There are attached to the complaint copies of the certificate of judgment which was filed for record in Clay County, Alabama, and two other instruments:

1. A trust agreement between the debtor's late father, as settlor, and the bank's predecessor and the debtor, as trustees, dated September 3, 1974; and

2. A deed from the debtor's mother and his late father to the bank's predecessor and the debtor, as trustees under the trust agreement, purporting to convey fee-simple title to some 600 acres of land in Clay County, Alabama, and dated September 19, 1974.

Pertinent to the question of whether Central Soya's complaint must be dismissed for failure to state a claim upon which relief can be granted are the following three sections of the *Code of Alabama* (1975):

§ 6–9–210.

The owner of any judgment ... may file in the office of the judge of probate of any county of this state a certificate of the clerk or register of the court by which the judgment was entered, which certificate ... shall be registered by the judge of probate in a book to be kept by him for that purpose....

§ 6–9–211.

Every judgment, a certificate of which has been filed as provided in section 6–9–210, shall be a lien in the county where filed on all property of the defendant *which is subject to levy and sale under execution....* [emphasis added.]

§ 6–9–40.

Executions may be levied:

(1) On real property to which the defendant has a legal title or a perfect equity ... or in which he has a vested legal interest in possession, reversion or remainder....

(2) On personal property of the defendant, *except things in action....*

(3) On an equity of redemption in either land or personal property. .... [emphasis added.]

■ Without further detail, it is the opinion of the bankruptcy judge, and it appears to be the opinion of respective counsel for Central Soya, the debtor, and the bank, that the net effect in this proceeding of these three code sections is that Central Soya did not obtain a lien upon the Clay County land if, at the time the certificate of judgment was filed and subsequent thereto, the debtor had neither the legal title nor a perfect equity in the real property, by reason of its encapsulation within the trust created by the debtor's late father.

Undaunted by this rather formidable proposition, counsel for Central Soya strike out against the trust itself by an assertion which in essence is that the trust is *not* in fact a trust and that the legal title to the Clay County real property became vested in the debtor on September 3, 1979, by virtue of the powers which the trust instrument gave to the debtor five years from the date of the trust instrument. The contention is that, when those powers given to the debtor came into effect, the trust was no longer an "active" trust but became a "dry" or "passive" trust. It is the opinion of the bankruptcy judge, and apparently the opinion of the respective counsel for Central Soya, the debtor, and the bank, that a dry or passive trust is made anomalous by the so-called Alabama "Statute of Uses," found in *Code of Alabama* (1975), as follows:

§ 35–4–250.

No use, trust or confidence can be declared of any land, or of any charge upon the same, for the mere benefit of third persons; and all assurances declaring any such use, trust or confidence must be held and taken to vest the legal estate in the person or persons for whom the same is declared....

At least a summary of the provisions of the trust agreement is required for an understanding of the exact issue in this adversary proceeding. The trust agreement declares that the trustees shall hold the trust estate for the use and benefit of the debtor and shall pay to him the entire net income and such of the principal as the trustees may from time to time deem necessary for his health, education, maintenance and support, taking into account his other known resources. In this proceeding, the debtor's age is not established, but the trust instrument requires the trustees to pay over to him "one-half of said trust" at age 35 years and the remainder at age 55 years. In the event that the debtor does not attain the latter age, the bank is directed to pay over "said trust" to his descendents, as may be directed and appointed in his last will, with any unappointed portion to go to the debtor's living descendents or, if none, to the settlor's descendents.

The trustees (the bank's predecessor and the debtor) were directed to hold and manage the trust estate and were given such powers as one might expect, including powers to sell, convey, exchange, or rent all or any portion of the trust estate and to invest and reinvest the trust estate. All of the duties and powers of the trustees, however, were made subject to a crucial provision in the trust instrument, effective five years from its date and thereafter during the continuance of the trust, which stated that "the trustees shall obtain and are hereby authorized and directed to act upon the written directions of grantor's son, Madison H. Hooton, Jr., regarding the sale of land or of timber or of both...." This was coupled with the following provision: "[t]he trustees shall not be liable for any loss or claim of any kind or nature whatsoever resulting by reason of acting or refraining from acting according to such directions received by them from said son."

In this adversary proceeding, the respective briefs submitted for Central Soya and for the bank are comprehensive and persuasive. They differ only as to whether the trust agreement established a perfectly-valid active trust[1] which—depending upon the debtor's age—continues to this day or whether the powers of direction to the trustees given to the debtor five years after the date of the trust agreement converted the trust, on September 3, 1979, into

---

1. Permitted by the terms of Code of Alabama (1975) § 35–4–251.

a dry or passive trust, thereby vesting in the debtor the title to the Clay County land and making it subject to a lien created by the filing of Central Soya's certificate of judgment on December 6, 1982.

*Conclusions by the Court—*

When all other propositions and arguments are cut away, the difference in the position assumed by Central Soya and the position assumed by the debtor and the bank appears to the Court to rest upon the conflicting interpretations given to that provision in the trust instrument which reads as follows: "[t]he trustees shall not be liable for any loss or claim or any kind or nature whatsoever resulting by reason of acting or refraining from acting according to such directions received by them from said son." In the brief submitted for the bank, counsel stated the following:

> The provision giving Hooton the right to instruct the trustees to sell the property is irrelevant because the trustees can ignore that instruction without liability to the beneficiary, and because the beneficiary will not have title to any trust property until he reaches 35 years of age, and until the trustees convey title to him.

A completely opposite construction of this provision in the trust agreement is stated in the brief submitted for Central Soya:

> The effect of section (b) of ARTICLE TWO is to grant Madison H. Hooton, Jr. a general power of appointment over the trust corpus. At any time, Madison H. Hooton, Jr. could direct the corporate trustee and himself as individual trustee to convey all of the land in the trust corpus to Madison H. Hooton, Jr. for one dollar, and the contingent remaindermen beneficiaries could not sue either the individual trustee or the corporate trustee because the last sentence of section (b) provides "[t]he trustees shall not be liable."

The bankruptcy judge concludes that this disagreement as to the meaning of the referred-to provision in the trust agreement is a telling difference and that the

interpretation given by the bank rests upon a misreading of the trust provision. The trustees are not freed from liability "by reason of acting or refraining from acting" *contrary* to directions from the debtor (which the trustees are bound to obtain regarding the sale of land or timber) but when "acting or refraining from acting *according* to such directions." [emphasis added.]

When this provision became effective, it gave the debtor unfettered control of the disposition of the corpus of the trust, and this converted the trust from an active trust into a merely dry or passive trust. At that point, it became a "use ... for the mere benefit of [a] third [person] ... [then] held and taken to vest the legal estate in the person or persons for whom the same [was] declared...." Thus, it became possible for Central Soya—as far as the facts are now presented to the Court—to obtain a lien upon the Clay County land by its filing a certificate of the judgment against the debtor and others. This conclusion means that it is within the realm of possibility that Central Soya may obtain a favorable judgment in this adversary proceeding and that the motions to dismiss the complaint are not well taken and must be denied.

This conclusion does not mean that the motions to dismiss may, under the circumstances here, be converted by the Court into motions for summary judgment and a final judgment entered in favor of Central Soya. The Court judicially knows that the debtor's mother and his late father also commenced a chapter 11 bankruptcy case (Case No. 83–4500), which is pending before the undersigned bankruptcy judge. There is no evidence before the Court at this time as to whether the trust agreement or the conveyance of real property or both were filed for record with the Probate Judge of Clay County, Alabama.[2] If either was not filed for record, the effect that this omission would have upon whatever title was vested in those debtors would have to be considered by the bankruptcy judge. Except for the right to compensation, those

---

**2.** As to the necessity for filing for record a

conveyance of real property, see Code of Ala-

debtors, as debtors in possession, are given all of the rights and powers of a trustee serving in a chapter 11 case.[3]  Those rights and powers include the "strong arm" of "a bona fide purchaser of real property."[4]  Thus, it is conceivable that it may be necessary to add to the adversary proceeding other parties who may have a claim to the real property superior to that of a claim by the debtor's creditor to a lien upon the debtor's title to the land.

### Order by the Court

In view of the foregoing, it is ORDERED by the Court that the respective motions of the debtor and of the bank for the Court to dismiss the complaint of Central Soya are denied, and that a copy of the foregoing shall be sent by the clerk through the United States mails to each of the following (which shall be sufficient service and notice hereof): counsel for the debtor, counsel for the bank, counsel for Central Soya, Mr. Tim Coe, and the United States trustee for this district.

---

bama (1975) § 35–4–90.  As to the details of such filing, see §§ 35–4–50, 35–4–51, 35–4–59, and 35–4–62.

